UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANDRE LOVE,

       Plaintiff,                                    Hon. Paul L. Maloney

v.                                                    Case No. 1:08-CV-242

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/


**REPORT AND RECOMMENDATION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff was entitled to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act from August 1, 2001, through August 30, 2003, but not thereafter. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

       Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision. (Tr. 21, 68). He possesses a General Equivalency Diploma (GED) and worked previously as an assembler, a machine operator, and a parts inspector. (Tr. 20, 97-103, 222).

Plaintiff applied for benefits on October 14, 2004, alleging that he had been disabled since October 16, 1999, due to a leg injury. (Tr. 68-70, 80, 136-38). Plaintiff subsequently amended the onset date of his disability to August 13, 2001. (Tr. 226). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 32-48). On June 1, 2007, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, Rich Riedl. (Tr. 218-66). In a written decision dated August 7, 2007, the ALJ determined that Plaintiff was entitled to disability benefits from August 1, 2001, through August 30, 2003, but not thereafter. (Tr. 13-21). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## **RELEVANT MEDICAL HISTORY**

On October 16, 1999, Plaintiff was involved in a motorcycle accident in which he suffered "severe" fractures of his right femur, tibia, and fibula. (Tr. 149). Two days later, Dr. Yousif Hamati performed surgery on Plaintiff's right leg. (Tr. 149-50). Plaintiff underwent a second surgical procedure on January 7, 2000, also performed by Dr. Hamati. (Tr. 146).

Following a March 20, 2000 examination, Dr. Hamati reported that Plaintiff was "healing pretty good." (Tr. 144). On June 19, 2000, Dr. Hamati reported that Plaintiff was "doing all right." (Tr. 143). The doctor reported that "it is time for [Plaintiff] to start going back to work," but that he "should have a sit/stand option." (Tr. 143). Plaintiff later quit his job "due to the pain," but also acknowledged that "his company was about to close down when he quit." (Tr. 151).

On January 21, 2005, Plaintiff participated in a consultive examination conducted by Dr. Donald Sheill. (Tr. 151-54). Plaintiff reported that because he occasionally trips, as a result of his leg injury, he uses a cane. (Tr. 151). Plaintiff reported that "most of his pain" was in his right knee and calf, but that he was also experiencing "low back pain that seems to be worsening over time." (Tr. 151). Plaintiff reported that he experiences a "noticeable improvement" in his pain when he takes over-the-counter ibuprofen. (Tr. 151).

The doctor observed that Plaintiff experiences leg length discrepancy. (Tr. 152). Plaintiff walked with a "moderately unsteady" gait. (Tr. 152). An examination of his lower right leg revealed a "mild valgus deformity as well as toeing in of 20 degrees." (Tr. 152). Plaintiff reported that knee motion was "uncomfortable," but an examination revealed no evidence of knee joint tenderness. (Tr. 152). Plaintiff was unable to heel or toe walk, but the doctor reported that "it is unclear if this is pain limited or due to weakness." (Tr. 152). An examination of Plaintiff's hands

reformed no evidence of atrophy or deformity, and Plaintiff exhibited 5/5 grip strength, as well as normal dexterity. (Tr. 152). Dr. Sheill concluded that Plaintiff suffered from "several functional difficulties." (Tr. 152). The doctor, however, did not identify what these difficulties were or whether they impaired Plaintiff's ability to perform work activities. (Tr. 151-54).

On January 17, 2006, Plaintiff began treating with Dr. S. Maxine Peterson. (Tr. 175-76). Plaintiff reported that he was experiencing headaches and pain in his back and lower right leg. (Tr. 175). The doctor reported that Plaintiff walked with a limp and used a cane "to assist in ambulation." (Tr. 175). Plaintiff reported that he was able to manage his pain with Vicodin. (Tr. 175). The results of a physical examination were unremarkable. (Tr. 176).

Treatment notes dated February 14, 2006, indicate that Plaintiff was taking his medications as prescribed without any side effects. (Tr. 173). The results of a physical examination were unremarkable. (Tr. 173). When he was examined on February 28, 2006, Plaintiff reported that he has "no complaints" and was "feeling well." (Tr. 172). The results of an examination were unremarkable and Dr. Peterson reported that Plaintiff was in no acute distress. (Tr. 172).

On March 2, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 170-71). Plaintiff reported that his back and leg pain was "tolerable on pain medications." (Tr. 170). An examination of Plaintiff's back revealed no evidence of tenderness or spinal deviation. (Tr. 170). An examination of Plaintiff's extremities revealed no evidence of edema, clubbing, or cyanosis. (Tr. 170). The results of motor, sensory, and cerebellar testing were unremarkable. (Tr. 170).

On July 6, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 167). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 167). Plaintiff characterized his activity level as "very sedentary" and reported that he was

unable to stand or walk for "long periods of time." (Tr. 167). Plaintiff walked with a limp, but the results of an examination were otherwise unremarkable. (Tr. 167). Treatment notes dated July 20, 2006, reveal that Plaintiff was "feeling well" with no headaches or other complaints. (Tr. 166). Dr. Peterson observed that Plaintiff was in no acute distress. (Tr. 166).

On September 7, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 209). Plaintiff reported that he was experiencing back pain and right leg pain with intermittent numbness and paresthesias. (Tr. 209). Plaintiff reported that he was "tolerating" his pain with Vicodin. (Tr. 209). Plaintiff experienced "difficulty" squatting and stooping, but exhibited 5/5 strength in his lower extremities. An examination of Plaintiff's back revealed no evidence of tenderness. (Tr. 209).

On September 25, 2006, Dr. Peterson completed a report regarding Plaintiff's functional capacity. (Tr. 202-05). The doctor reported that during an 8-hour workday Plaintiff can sit and stand/walk for "less than 2 hours" each. (Tr. 204). The doctor reported that Plaintiff required a sit/stand option. (Tr. 204). Dr. Peterson reported that Plaintiff can occasionally lift/carry less than 10 pounds, rarely lift/carry 10-20 pounds, and can never lift/carry 50 pounds. (Tr. 204). The doctor also reported that Plaintiff can rarely twist, stoop, crouch, squat, or climb stairs. (Tr. 205).

On November 7, 2006, Plaintiff was examined by Dr. Peterson. (Tr. 208). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 208). The doctor observed that Plaintiff was "continuing to use [a] cane to assist in ambulation." (Tr. 208). Dr. Peterson continued to prescribe Vicodin for Plaintiff's pain. (Tr. 208).

On November 16, 2006, Plaintiff participated in a series of x-rays. (Tr. 210-14). Plaintiff's right femur was observed to be "fairly well healed with mature bone formation bridging the fracture site." (Tr. 210). There was no evidence of acute osseous abnormality. (Tr. 210). X-rays

of Plaintiff's lumbosacral spine revealed only "mild degenerative changes at the thoracolumbar junction." (Tr. 211). X-rays of Plaintiff's right hip revealed "moderate" osteoarthritis. (Tr. 212). X-rays of Plaintiff's right tibia and fibula revealed "satisfactory healing" with "stable alignment." (Tr. 213). X-rays of Plaintiff's right knee revealed "minimal" degenerative changes. (Tr. 214).

On February 27, 2007, Plaintiff was examined by Dr. Peterson. (Tr. 217). Plaintiff reported that he was continuing to experience low back pain which radiated into his right lower extremity. (Tr. 217). Plaintiff described his activity level as "very sedentary" and reported that he "avoids prolonged standing or walking." (Tr. 217). Plaintiff also reported that his pain was "tolerable" so long as he takes his medication. (Tr. 217).

At the June 1, 2007 administrative hearing, Plaintiff testified that he experiences difficulty when attempting to walk without using a cane. (Tr. 231-32). Plaintiff reported that he was still suffering pain in his back and right lower extremity. (Tr. 236). Plaintiff testified that he can walk "about half a block" if he uses his cane. (Tr. 241-42). He reported that he can lift a gallon of milk, but cannot lift 20 pounds. (Tr. 248). Plaintiff testified that he is unable to perform household chores or yard work because of his pain. (Tr. 253).

## ANALYSIS

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). If a claimant is found to be disabled during this five-step process, the ALJ must determine whether the claimant's disability continues through the date of the decision or whether the claimant is instead only entitled to a closed period of disability. This is accomplished by applying the medical improvement standard articulated at 20 C.F.R § 404.1594 (for DIB claims) and 20 C.F.R. § 416.994 (for SSI claims). *See Mendoza v. Apfel*, 88 F.Supp.2d 1108, 1108-13 (C.D. Cal. 2000) (citations omitted) (recognizing that the "medical improvement standard applies to cases. . .involving a closed period of disability"); *Johnson v. Astrue*, 2008 WL 320059 at *1-2 (W.D. Okla., Jan. 4, 2008) (citation omitted) (same).

With one exception[2], the medical improvement analysis is the same for DIB and SSI claims and involves the following steps: (1) does the claimant have an impairment or combination of impairments that meets or equals in severity a listed impairment; (2) has the claimant experienced "medical improvement"[3] in his condition; (3) has the claimant's medical improvement resulted in an increase of his residual functional capacity (RFC); (4) are the claimant's current impairments in combination severe; (5) if the claimant's current impairments are severe, the ALJ must determine

---

which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

[2] The medical improvement analysis applicable to DIB claims also asks whether the claimant is performing substantial gainful activity, which is not relevant in this case. *See* 20 C.F.R. § 404.1594(f)(1).

[3] Medical improvement is defined as "any decrease in the medical severity" of the impairments on which the determination of disability was based. 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).

if the claimant's RFC precludes the performance of his past relevant work, if not the claimant will be found to not be disabled; and (6) if the claimant's RFC does preclude the performance of his past relevant work, the ALJ must determine whether there exists other work which the claimant can perform despite his limitations. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5).

With respect to the time period from August 1, 2001, through April 30, 2003, the ALJ determined that Plaintiff suffered from the following severe impairment - status post severe leg fracture with two surgical repairs. (Tr. 17). The ALJ found that this impairment satisfied Section 1.02 of the Listing of Impairments, which addresses "major dysfunction of a joint(s)." (Tr. 17). Thus, the ALJ found that Plaintiff was disabled from August 1, 2001, through April 30, 2003. (Tr. 18). As for the time period from May 1, 2003, through August 7, 2007 (the date of the ALJ's decision), the ALJ found that Plaintiff experienced a medical improvement in his condition that enabled him to perform his past relevant work. (Tr. 18-20). Accordingly, the ALJ concluded that Plaintiff's disability ended as of May 1, 2003.

a. The ALJ's Finding of Medical Improvement

Plaintiff first asserts that the ALJ's determination that he experienced a medical improvement in his condition is supported by insubstantial evidence.

In support of his finding that Plaintiff experienced a medical improvement in his condition, the ALJ indicated that Plaintiff's pain was controlled with medication. (Tr. 18). The ALJ also observed that Dr. Hamati, on October 28, 1999, had indicated that Plaintiff would be "disabled for at least 18 months." (Tr. 145). While this particular aspect of the ALJ's decision is not

particularly well-written, the Court nonetheless finds that there exists substantial evidence to support the ALJ's conclusion that Plaintiff experienced a medical improvement in his condition.

As detailed above, Dr. Hamati reported that Plaintiff's surgeries were successful and that he could return to work with a sit/stand option. Plaintiff repeatedly indicated that his pain was controlled with medication. The results of physical examinations consistently revealed the absence of abnormal findings. X-rays failed to reveal any significant abnormality. The medical evidence overwhelmingly reveals that Plaintiff experienced an improvement in his condition.

The ALJ's failure to discuss some of this evidence in the context of whether Plaintiff experienced a medical improvement of his impairment does not warrant a reversal of the his decision. To the extent that the ALJ failed to discuss the evidence supporting this conclusion in the section of his opinion in which he makes this determination, the Court notes that such evidence is discussed elsewhere in the ALJ's decision. As discussed below, the ALJ's ultimate determination that Plaintiff is presently capable of performing his past relevant work is supported by substantial evidence, thus a remand in this matter would constitute a waste of scarce administration resources. *See Griffeth v. Commissioner of Social Security*, 217 Fed. Appx. 425, 428 (6th Cir., Feb. 9, 2007) ("[w]e are not required to remand where to do so would be an idle and useless formality"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

> b. The Improvement in Plaintiff's Condition Resulted in an Increase in his Residual Functional Capacity

Plaintiff next argues that the ALJ erred by finding that from August 1, 2001, through April 30, 2003, Plaintiff was disabled because his condition satisfied Section 1.02 of the Listing of Impairments. Plaintiff asserts that instead of finding Plaintiff disabled at step two of the initial five-step disability analysis, the ALJ should have continued with the analysis and assessed Plaintiff's RFC. According to Plaintiff, had the ALJ properly performed this aspect of the analysis he would have been obligated later in the analytical process to compare this initial RFC finding with the RFC finding regarding Plaintiff's abilities as of May 1, 2003 (the date Plaintiff's disability ended). Plaintiff appears to suggest that this comparison would have revealed that his functional capacity had diminished as of May 1, 2003.

Even if the Court assumes that the ALJ erred by not initially assessing Plaintiff's RFC, such would entitle Plaintiff to relief only if his initial RFC was equally or less restrictive than his RFC as of May 1, 2003. In other words, this alleged error is significant only if Plaintiff's ability to perform work activities (as expressed through his RFC) decreased or remained the same as a result of the medical improvement he experienced as of May 1, 2003. Even though (as discussed below) the Court finds the ALJ's RFC determination to be supported by less than substantial evidence, given the severity of Plaintiff's leg injuries, the treatment he initially received to treat his injuries, and the length of time he required to recuperate, it is not reasonable to argue that Plaintiff was capable of a greater range of activities prior to May 1, 2003, as compared to the period beginning on May 1, 2003. The Court finds, therefore, that even if the ALJ erred in this regard, any such error is harmless.

   c.  The ALJ Properly Assessed the Medical Evidence

Plaintiff asserts that the ALJ erred by failing to give "good reasons" for his rationale to afford less than controlling weight to Dr. Peterson's opinions. The Court notes that Plaintiff has failed to identify any specific opinion or opinions expressed by Dr. Peterson the ALJ allegedly failed to properly evaluate. Nevertheless, contrary to Plaintiff's assertions, the ALJ assessed Dr. Peterson's opinions and provided several reasons, all supported by the evidence of record, for affording such less than controlling weight.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). However, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004).

The ALJ observed that Dr. Peterson "gives [Plaintiff] postural limitations in areas where there is no evidence she tested his abilities." (Tr. 20). Plaintiff does not dispute this, but instead suggests that his limitations were so obvious that the doctor was not required to actually test his functional abilities. The ALJ properly noted that "some of [the doctor's] conclusions contradict her own findings," as well as other evidence of record. (Tr. 20). The ALJ also observed that Dr. Peterson's opinion that Plaintiff experiences severe limitations is contradicted by the results of numerous physical examinations, as well as Plaintiff's reports that his pain is sufficiently managed with medication. (Tr. 20). In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. Peterson's opinion.

> d.  The ALJ's Determination that Plaintiff Could Perform his Past Relevant Work, or in the Alternative, that there Exists a Significant Number of Jobs which Plaintiff can Perform Consistent with his RFC is not Supported by Substantial Evidence

The ALJ found that as of May 1, 2003, Plaintiff retained the ability to perform a range of light work, as detailed below. Finding that Plaintiff's RFC did not preclude the performance of his past relevant work, the ALJ concluded that Plaintiff was not disabled. Plaintiff asserts that this conclusion is not supported by substantial evidence. The Court agrees.

The ALJ found that as of May 1, 2003, Plaintiff was capable of performing work, subject to the following limitations: (1) he can lift and carry up to 20 pounds occasionally and 10 pounds frequently; (2) he can stand and/or walk for about six hours during an 8-hour workday with normal breaks; (3) he requires a "hand-held assistive device" to ambulate; (4) he can sit for about six hours during an 8-hour workday; (5) he requires a sit-stand option; (6) he can occasionally

balance, stoop, kneel, crawl, and climb ramps/stairs; and (7) he can never crouch or climb ladders, ropes, or scaffolds. (Tr. 18). The Court discerns a fundamental illogic to this determination. The Court does not doubt that Plaintiff can *lift* 20 pounds, but fails to comprehend how Plaintiff can *carry* 20 pounds if he requires a "hand-held assistive device" to ambulate. The ALJ has not addressed the illogic of this conclusion. The Court finds, therefore, that the ALJ's RFC determination is not supported by substantial evidence.

The vocational expert testified that given Plaintiff's RFC, Plaintiff could perform his past relevant work. The vocational expert further testified that based on Plaintiff's RFC there existed a significant number of jobs which Plaintiff could perform despite such limitations. However, the ALJ's RFC determination is not supported by substantial evidence. Because the vocational expert's testimony was premised upon a faulty RFC determination, the ALJ's reliance thereon does not constitute substantial evidence. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled. The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, a determination of Plaintiff's RFC and whether

14

such precludes the performance of his past relevant work or any other work which exists in significant numbers.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 10, 2009         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge